## KENTUCKY-TENNESSEE LIGHT & POWER CO., v. D. A. BURK-HALTER and Wife, MAMIE BURKHALTER.

Western Section. June 22, 1928.

Petition for Certiorari denied by Supreme Court, January 12, 1929.

L. C. Hannings and R. E. Maiden, of Dresden, for plaintiff in error.

W. R. McWherter, C. A. Organ and Harry E. Jones, all of Dresden, for defendant in error.

SENTER, J.  On August 26, 1926, the plaintiff in error and the appellant herein, filed its petition in the Circuit Court of Weakley county, Tennessee, against the defendants in error, the appellees herein, seeking to condemn a pole line easement over the lands of the defendants in error in Weakley county.  The petition avers that it is a public service corporation, organized under the laws of the State of Kentucky, and that it has complied with the laws of the State of Tennessee entitling it to conduct its business in this State. The petition sets out with much detail the character of its business, that of operating transmission lines to transmit electric current for power, and furnishing motive power, etc.  All essential averments are made in the petition entitling it to condemn property under the condemnation laws of this State.

As to the nature and character of the use of the lands sought to be condemned the petition charges and avers as follows:

". . . In the construction of said transmission line through and over the lands of the defendants, it is absolutely necessary and essential that petitioner have the right and privilege of going upon said.lands and constructing its said line with only one row of poles, consisting of only eleven in number, and that said line of poles are to .be set practically in a straight line from the west side of said lands to the east side thereof, and that said poles will be set at a distance of about 300 feet apart through and across said land, the whole length of the line on the lands of the defendants will be about 3050 feet, and the poles will be set about five and one-half feet deep into the ground, and to which poles will be attached cross-irons and wires and insulators.  The diameter of said poles at the base will not be more than twenty inches and there will be appropriated for the setting of said eleven poles and one guy, which will be needed at the second pole from the west, about the one-hundredth part of one acre of land in the setting of said eleven poles and the guy.  The poles set upon said land will be of the most lasting timber obtainable and will be about thirty-five feet in length and at the top of said poles, after they are set will be not more than thirty feet above the sur-

face of the land, and the cross-irons attached to said poles, wires and insulators, used in the construction of said transmission line will be of the best quality known to the art or trade, and used for similar purposes.

"Therefore, petitioner charges, that it is not at all likely that it, its agents or servants will be required to go upon said land for the purpose of making any kind of repairs, within a period of twenty years or longer from the date of the construction of said transmission line. However, petitioner desires the right of ingress and egress to and from said lands for the purpose of constructing said line, and for the purpose of keeping it in proper condition and repair, and also the right and privilege to be allowed to clear and to keep clear a right of way for fifty feet on each side of said line, free from all obstructions, such as growing timber, so as to guarantee to the public its right to keep said transmission line in good state of repair and free from damage or injury by falling timber, or other obstructions, in order that it may maintain free and unrestricted transmission of power over said line at all times, but, its (is) specifically understood that petitioner disclaims any further use of said land than as above set out, and the defendants, their heirs or assigns, shall retain the right and privilege to use and cultivate the lands included in the fifty feet on each side of said transmission line and between the poles and under the wires composing said transmission line for any agricultural purposes, or for any other purpose desired, except such use thereof as might interfere with or endanger said transmission line and the general public as well. It is also agreed by petitioner, that any timber that may be upon said lands, that is necessary to be cut and removed, that the same shall be cut into such lengths as defendants may direct, that all brush will be piled and burned by it without expense to defendants, and that all of said timber shall be and remain the property of the defendants, the petitioner expressly disclaiming any right or interest therein.

"It being the purpose of petitioner to have only the right and privilege to construct and maintain its transmission line which shall consist of only eleven poles and one guy as above stated and to which poles will be attached cross-arms, wires and insulators, and all of said cross-arms and attachments placed upon said poles shall be at a distance of not less than twenty-five feet from the surface of the land upon which said easement is desired.

"Petitioner also agrees that such damage that it or its agents and servants may do or cause to said lands, or to the crops

that may be grown thereon from year to year, or to any of the other property of the defendants, or their heirs or assigns, after the construction of said transmission line, in going upon said lands for the purpose of making repairs to said lines, or for any other purpose, shall be paid for by petitioner."

The petition further states that the petitioner had endeavored to acquire such privilege or easement and right of way, by purchase, but that the parties did not agree on the price. The petition sets out the location of the lands sought to be condemned.

Pursuant to the filing of the above petition notice was duly served on the defendant, and a jury of view was directed to be summoned by the sheriff to inquire and assess the damages, with directions to the jury with reference to the use of the property as set forth in the petition. The jury of view made its report, and in its report specifically referred to the uses to which said property would be put by the petitioner, and in so doing followed the averments in the petition, and upon that basis reported that the land which would be in actual use would be less than one-hundredths part of an acre, and valued the same at the sum of $70, and the damage to the timber to be cut $25 and the value of the growing crops on the right of way at $5, making a total of $100.

The defendants filed exceptions to the report of the jury of view, on several grounds unnecessary to be noticed at this time. Upon a hearing of the exceptions filed to the report of the jury of view, the exceptions were sustained, and the court ordered that a new writ of inquiry for damages be awarded, and in the order named the members to constitute the new jury. The naming of the jury in the order was by consent of all parties. The new jury returned its report as directed, and reported that the jury after going on the premises as directed, examined it fully, finding that the petitioner would require, as set forth in their original petition, a strip 100 feet wide running entirely across defendants tract from west to east, "beginning at a point in the west line of said described tract about 400 feet south of the Nashville, Chattanooga Railway lands, and run eastward across said tract for a distance of about 3050 feet crossing the east line about 400 feet south of said railway land. . . . The amount of land embraced in the strip of 100 feet by 3050 feet is about seven acres, and we agree and report that $700 as the fair and reasonable value of said ground and damage occasioned to the owner by taking it for the use of the Kentucky-Tennessee as sought in its petition, and five dollars ($5) as damage to the crop growing thereon, making a total damage of $705."

Upon the coming in of this report, the petitioner, Kentucky-Tennessee Light & Power Company, appealed to the circuit court. Inasmuch as the question of this appeal is made the subject of discussion in the briefs of the parties, and because of subsequent action taken, or sought to be taken by the petitioner, we quote the appeal from the record, and which is as follows:

"Kentucky-Tennessee Light & Power Co.

"v.                                                        No. 991.

"D. A. Burkhalter.

"In the Circuit Court at
"Dresden, Tennessee.

"Petitioners, Kentucky-Tennessee Light & Power Company appeal from the verdict of the jury of view, returned March 24, 1927, to the court and herewith tenders its bond for such appeal."

The petitioner executed its appeal bond in the sum of $1500, and which appeal bond recites as follows:

". . . but to be void on condition the above bounden Kentucky-Tennessee Light & Power Company shall successfully prosecute an appeal it has this day prayed and obtained to the Circuit Court of Weakley county from the verdict of the jury of view, in the case of the Kentucky-Tennessee Light & Power Co. v. D. A. Burkhalter, No. 991, in said circuit court, by which verdict the sum of seven hundred five dollars ($705), is awarded to defendant in said suit, as value of right of way and damages."

On motion of the petitioner a jury was demanded to try the issues joined between the parties.

It appears from the bill of exceptions that after the jury had been impaneled and sworn, but before any evidence had been heard, the petitioner made an application to the court to be permitted to amend its original petition so as to more particularly and definitely set out and describe the interest which it required and proposed to take and to condemn in the case. This proposed amendment to the original petition sets out at considerable length just what the petitioner desired in the way of an easement for its transmission line across the land of defendants, but is in the main a repetition of the averments in the original petition, with certain agreements with reference to the use of the property, and that said limited use to be made and become a part of the decree of the court, and that no additional use would be made of the property sought to be condemned.

The trial judge overruled the application of the petitioner to file said amendment and declined to permit the same to be filed, and to which action of the court the petitioner excepted.

It further appears from the record and the bill of exceptions that, after the court declined and refused to permit the filing of the

proposed amendment to the original petition, and declined to permit said amendment to be made, the petitioner, before the taking of any evidence, moved the court for leave to then file their exceptions to that part and so much of the report of the jury of view filed in the case, as "returns and allots seven acres of land to the petitioner out of the lands of the defendants," setting out in writing the grounds of the exceptions.

The court overruled and disallowed said exceptions, and declined to permit the same to be filed. To the action of the court the petitioner excepted. The exceptions offered by the petitioner to the report of the jury of view are set out at considerable length, but the grounds may be summarized and stated as follows: Because the report of the jury is in conflict with the requirements of the petition in the matter of the right of way petitioned for condemnation; and because the petitioner only seeks and needs an easement for the location of its pole line, with the further right of ingress and egress, and with the further right to cut and remove timber for a distance of fifty feet on each side of the right of way, and that in all other respects the owner of the fee would not be interfered with in the use of the land condemned; and because the easement sought, and as limited in its use, is authorized by the Acts of 1925, and in accordance with certain statutory provisions; and because the jury of view failed to set out and designate a suitable pole line for the use of the petitioner under the law; and because it was error for the jury of view to allot and set apart unconditionally seven acres of land as described in the report.

The jury returned a verdict in favor of the defendants and against plaintiff for the aggregate sum of $843.66, and upon this verdict of the jury judgment was rendered by the court for the sum of $843.66 and the cost of the cause. A motion for a new trial was duly made, which motion was overruled by the court, but upon the condition that defendants remit the sum of $40 covering the item of alleged damages for removing a barn, and this having been complied with by the defendants agreeing to said remittitur, the motion for a new trial was overruled and disallowed. From this action of the court in overruling the motion for a new trial, and in rendering the judgment against it, the petitioner prayed and was granted an appeal in the nature of a writ of error to this court, and numerous errors have been assigned.

We will not undertake to consider and discuss all these numerous assignments of error sixteen in number, separately, but will discuss and dispose of the assignments of error collectively.

It is not controverted that the petitioner is duly incorporated under the laws of the State of Kentucky and has been duly do-

mesticated to operate its business in Tennessee. It is conceded that its business is a public service corporation and entitled to condemn a right of way for its transmission lines. The principal question submitted for determination goes to the measure of damages for the property condemned and for the easement rights to be acquired by the petitioner, and whether a limitation as to the use of the right of way condemned, and a limitation such as set forth in the petition will operate to change the usual and ordinary measure of damages, which is the value of the land taken without deduction, and the value of incidental damages or incidental benefits. Under the several assignments of error other questions are made. It is contended under certain of the assignments that the trial judge erred in refusing to permit the petitioner to file an amended petition after the jury had been impaneled and sworn, but before evidence was introduced. By other assignments of error it is contended that the trial judge erred in refusing to permit the petitioner to file the exceptions tendered to the report of the jury of view, which motion and exceptions was also after the jury had been impaneled and sworn but before any evidence was taken. Other assignments of error are directed to certain portions of the charge of the court to 'the jury, and the refusal of the trial judge to give in charge the several special requests tendered by the petitioner at the conclusion of the general charge.

The first question to be determined is with reference to the measure of damages for the right of way sought to be condemned in this proceeding. The petition for condemnation of the right of way set out with great detail the exact use to which the right of way or easement would be put. It being contended that only the space occupied by the eleven poles would be actually taken and used, and that a right of egress and ingress for the purpose of constructing the transmission line and afterwards for the purpose of making any repairs that may be necessary, would be the extent of the use to which the land would be burdened; that because of the character and quality of the poles and the cross-arms and wires attached thereto, there would be but rare necessity for entering onto the right of way to make any changes, alterations or repairs, and that the fifty feet on each side of the pole line would not be used except to cut and remove the timber therefrom, and to keep down the growth of timber so as to keep the line free and safe from timber falling upon it, and with all other rights of the fee owner there would be no interference, and the fee owner would be entitled to cultivate the land, and in the event it did become necessary for the power company to enter onto the right of way and any damage should result to growing crops, or otherwise to the fee owner, the power company would pay such damage. It is

therefore the contention of the power company that with this limited use, and with the rights reserved to the fee owner, the measure of damages should be the difference in the value of the strip of land so burdened, and its value without the burden.

In support of this contention we are cited to the rule as announced in 10 R. C. L., p. 133, Sec. 117, under the caption "When Interest Remaining to Owner is Valuable." This statement of the rule would appear to support the contention of appellant. After stating the usual rule to the effect that the measure of damages in cases of condemnation by Railroad Company for its right of way in cities or towns or counties for highway or road purposes, the value of the land so taken is the proper measure of damages. This rule is predicated upon the ground that in such cases there is little or no substantial difference in the value between the easement and the fee, of which the law will take notice. But the author makes a distinction in cases where the easement is of a less exclusive character, as for example, that of a telegraph line, etc. This rule seems to have been adopted in several of the States, and in some of the States it is made the measure of damages by statutory enactments.

In this State there are statutory provisions governing condemnation proceedings for rights of way and easements, or burdens imposed upon the fee. In the present case appellant, by its petition, declared the importance of having a right of way 100 feet wide, or fifty feet on each side of the pole line. While the petition alleges that the petitioner will only actually use the space occupied by the poles, cross-arms and wires, it expressly avers that it will have need of the right of way as a means of ingress and egress in order to construct the line and to keep it in repair, or to rebuild it if necessary. The petition further avers that it will be necessary to have the right to cut and remove timber for a distance of fifty feet on each side of the pole line in order that the transmission line may be protected against falling timber or other obstructions that may interfere with the operation and proper maintenance of the transmission line with safety, and that this is a public necessity in order that the public may receive proper service from the transmission line. It will thus be seen that the petitioner seeks to condemn a strip of land 100 feet wide across the lands of the defendant. If the petitioner did not need or require a strip of land of this width for its purposes, the petition could have limited the land to be taken to a strip the width of its pole line, or such less amount than 100 feet as would serve its purposes. But this is not the case presented by the petition. The petition avers the necessity and importance of having an easement of 100 feet in width, al-

though the petition avers that as to the major portion of the strip it will occasion but little damage to the fee owner.

We have carefully examined the various enactments by the Tennessee legislature on the question of condemnation of private property, and the measure of damages. The procedure is clearly set forth, beginning with Sec. 1844 and concluding with Sec. 1880, (Shannon's Code). By Sec. 1844 it is provided that any person or corporation authorized by law to construct any railroad, turnpike, canal, toll bridge, road, causeway, or other work of internal improvement to which the like privilege is conceded, may take the real estate of individuals not exceeding the amount prescribed by law, or by the charter under which the person or corporation acts, in the manner and upon the terms therein provided. By Sec. 1845 is provided the proceedings by which the property may be appropriated, and is as follows:

"The party seeking to appropriate such land shall file a petition in the circuit court of the county in which the land lies, setting forth, in substance: (1) The parcel of land, a portion of which is wanted, and the extent wanted; (2) the name of the owner of such land, or, if unknown, stating the fact; (3) the object for which the land is wanted; (4) a prayer that a suitable portion of the land may be decreed to the petitioner and set apart by metes and bounds."

Sec. 1846 is with reference to the notice which shall be given to the owner of the land. By Sec. 1849 it is provided:

"After the requisite notice has been given, if no sufficient cause to the contrary is shown, the court shall issue a writ of inquiry of damages to the sheriff, commanding him to summon a jury to inquire and assess the damages."

By Sec. 1850 provision is made that the clerk may issue the writ of inquiry, after service of notice, and on which the sheriff will summon the jury. By Sec. 1854 provision is made that the sheriff shall give the parties or their agents three days notice of the time and place of taking the inquest, unless the time has been fixed by the order of the court. By Sec. 1855 provision is made for swearing the jury by the sheriff, to fairly and impartially, without favor or affection, to lay off, by metes and bounds, the land required by the proposed improvement, and to inquire and assess the damages. By Sec. 1856 it is provided that the jury will proceed to examine the ground and may hear testimony, but no argument of counsel, and set apart, by metes and bounds, a sufficient quantity of land for the purposes intended, and assess the damages occasioned to the owner thereby.

It appears that all these several sections of the Code were fully complied with.

By Sec. 1857 is provided the measure of damages, as follows:

"In estimating the damages the jury shall give the value of the land, without deduction, but incidental benefits which may result to the owner by reason of the proposed improvement may be taken into consideration in estimating the incidental damages."

On the question of measure of damages we find no other provision than is set forth in Sec. 1857 (Shannon's Code) above quoted.

It is contended by appellant that under Sec. 1870 (Shannon's Code), there is special provision made with reference to telegraph and telephone companies, and by which juries of view shall not be required to lay off the property, privileges, rights or easements included in the petition, or sought to be condemned, by metes and bounds, and in such cases it shall be discretionary with said juries whether they shall view the premises or not. This section (1870) is from chapter 135 of the Acts of 1885. This chapter is on the subject of the taking of the property, privileges, rights, or easements of private corporations for public purposes or internal improvements. (Sec. 1868, Shannon's Code.) In other words it is a statutory provision authorizing public service corporations to condemn a right of way over the easement or right of way occupied by another corporation, but not so as to interfere with the use and occupancy of the same by the first easement holder, such as telephone or telegraph lines on the right of way of a railroad company, and does not apply to the acquisition of right of way or easements on the lands of the fee owner, or private owner of the fee. In other words it is a provision for an easement on an easement, where such subsequent easement does not interfere with the operation of the first, or prior easement. (Railroad v. Telegraph Co., 17 Pick., 62; Ryan v. Terminal Co., 18 Pick., 119). In such cases it is held that the measure of damages is only nominal damages for the use of its right of way. In Railroad v. Telegraph Co., supra, the distinction between condemning a right of way by a telegraph company over and along the right of way of the railroad company, and that of condemning a right of way over the lands of the fee owner is clearly stated in the following language:

"The interest or estate which a railroad company requires in land over which its right of way extends, when they are acquired under condemnation proceedings, has been so often defined that it is familiar law. It does not acquire any estate in fee. It only acquires an easement or right of way, and this only for railroad purposes. While its right of way extends to a certain distance upon each side of its track, it has no right to occupy the way beyond its track, cuts and fills, or to such

distance and to such extent as to maintain its track and operate its trains. It can only go beyond these limits for necessary railroad purposes. It cannot sell, transfer, encumber, or use its right of way except as its necessities and convenience may demand for the proper operation of its road. It cannot license the appropriation of any part of such right of way to private business purposes, nor to public purposes except so far as needful and helpful to the operation of the road itself. (Jones on Easements, Sec. 383). Its right of way can therefore have no market value, because it cannot be placed upon the market, either at private sale or at public out-cry. A railroad company is entitled to have a right of way by process of condemnation, because it is a work of internal improvement —a quasi public use. But it has been held that land already taken by the exercise of imminent domain for a public use, and actually used for that purpose may be taken by legislative authority for other public uses not inconsistent with or destructive to the former use.''

It was upon this theory that the court held that the measure of damages would be nominal to the railroad company. That case also specifically stated that Secs. 1868, 1869 and 1870 of Shannon's Code, being chapter 135 of the Public Acts of 1885 applied to condemnation of rights of way over previous rights of way or previously granted easements.

While appellant has cited in its excellent brief authorities from other States in support of its contention as to the proper measure of damages, we have been cited to no Tennessee case that sustains the contention made by appellants, nor have we been able to discover any Tennessee case which recognizes any other, or different, measure of damages for the taking of property by corporations under the law of eminent domain, other than as provided by Sec. 1857, Shannon's Code, hereinbefore referred to and quoted. Appellant cites the case of Woodfolk v. R. R., 2 Swan, 420. This is a very early case decided in 1852, and in the headnote of that case it is said:

''The measure of the compensation to be made to the owner, in such case, is the fair cash value of the property taken, at the place and in the form taken; the incidental damages or benefits which are to result to him from whom the property is taken, from the use to which it is to be applied, form no element in the computation of the compensation.''

It will thus be seen that the above case holds directly contrary to the contention here made by appellant.

The latest expression of the Tennessee Supreme Court on the subject is the case of Light & Power Co. v. Baird, 152 Tenn., 348. In that case the Court of Civil Appeals, it appears, reversed the judgment of the trial court, being of the opinion that the defendant was entitled to recover the fair cash value of the land appropriated by petitioner, and not the mere value of the easement acquired by petitioner in said land. The Supreme Court affirmed the Court of Civil Appeals on that subject, and in the opinion by the late Mr. Justice Hall, it is said:

"We think petitioner having acquired a permanent easement in the strip of land mentioned and described in its petition, and in the consent decree entered in the case, it became liable for the value of that strip as if the fee had been taken. The right of petitioner to use this strip for all the purposes of its business and to control it and limit the right of the defendant in its use, is fixed by law."

The court stated further:

"It has a right always to enter upon the strip for the purpose of improving, repairing and building additions to its line or lines, and, if necessary, destroy any crops that may be growing thereon. Any right the owner has to use the premises is subordinate to the prior and superior rights of the power company. The owner has lost his right to build houses, fences, and other structures upon said land. He has lost his right to grow timber upon it. His interest in the property has been reduced to that of a servient estate subject to the rights of petitioner, and petitioner may exclude him absolutely from said premises at any time the exigencies of his business may require."

Appellant insists that the above holding by our Supreme Court has no application to the present case, because it appears that there was a consent decree with reference to the property to be taken. It is true there was a consent decree in that case. But all that is said by the court in the Baird case is true in the present case. The fact that the petition for condemnation, and the proposed amendment thereto offered to reserve certain rights in the defendants, such, for instance, as paying for any damage to growing crops by petitioner in entering upon the property for repairing its lines, etc., and also the right of the defendants to cultivate the land. These conditions could not be forced upon the defendants. The fee owner is entitled to the use of the right of way for purposes of cultivation even in the cases of railroad rights of way and to use any portion of the same not actually occupied by the owner of the right of way. (R. R. v. Telegraph Co., supra, and the numerous cases cited.)

We are of the opinion that the contention of appellant on the question of the measure of damages cannot be sustained, and all assignments of error based thereon are overruled. Having reached this conclusion the other assignments of error must also be overruled, as they become immaterial. The proposed amendment to the original petition was properly overruled and disallowed for the reason that it sought to set up an erroneous measure of damages, and the allegations and averments contained therein could have had no other purpose than to set up facts taking the measure of damages in this case out of the general rule as provided by Section 1857 for awarding damages in condemnation proceedings. This is also true with reference to the exceptions filed to the report of the jury of view, even though the filing of exceptions at that stage of the proceedings would be permissible. There was no error in the action of the trial judge in disallowing the amended petition and in disallowing the filing of the exceptions.

The other assignments of error are directed to the charge of the court on the question of the measure of damages, and are without merit. We are of the opinion that the general charge was a clear and comprehensive statement of the law on the subject of damages. The special requests for instructions to the jury tendered by appellant, all sought to have the measure of damages charged as contended for by appellant, and were properly denied for the reasons hereinbefore stated in discussing the question of damages.

It results that all assignments of error are overruled and the judgment of the lower court is affirmed. Judgment will be entered here for the amount of the judgment below with interest from the date of the judgment in the circuit court. Appellant and sureties on the appeal bond will pay the cost of this appeal.

Owen and Heiskell, JJ., concur.