# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

| | | |
|---|---|---|
| ROBERT E. EVANS, | ) | |
| Plaintiff/Appellee, | ) | Davidson Circuit No. 94C-257 |
| VS. | ) | Appeal No. 01A01-9608-CV-00386 |
| AMCASH MORTGAGE COMPANY, INC., | ) | |
| Defendant/Appellant. | ) | |

**FILED**

**August 1, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

APPEAL FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE
THE HONORABLE THOMAS W. BROTHERS, JUDGE

**PHILIP D. IRWIN**
**PAMELA KING**
**NEAL & HARWELL**
Nashville, Tennessee
Attorneys for Appellant

**ROBERT E. EVANS, pro se**
Nashville, Tennessee

**REVERSED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

In this defamation action, Robert Evans ("Plaintiff") filed suit against Amcash Mortgage Company, Inc. ("Defendant") and Franklin American Life Insurance Company[1] for an alleged defamatory statement made by Defendant's attorney to one of Defendant's employees. In granting the Defendant's motion for partial summary judgment, the trial court dismissed Franklin American Corporation from the suit, dismissed Plaintiff's claims against Defendant under a theory of "slander by action," and held that a genuine issue of material fact existed as to whether the statement made by Defendant's attorney to one of Defendant's employees regarding the reason for Plaintiff's employment termination is subject to a qualified privilege. Defendant appeals the judgment of the court below arguing that the trial court erred in denying Defendant's motion for summary judgment regarding the statement made by Defendant's attorney to one of Defendant's employees concerning the reason for Plaintiff's employment termination because the statement is subject to a qualified privilege and is not defamatory in nature. For the reasons stated hereafter, we reverse the judgment of the trial court and hold that the statement made by Defendant's attorney to one of Defendant's employees regarding the reason for Plaintiff's employment termination is subject to a qualified privilege and is not defamatory.

**FACTS**

On March 1, 1993, Plaintiff began his employment with the Defendant as the manager of Defendant's Nashville office.

On August 16, 1993 at approximately 9:00 p.m., an employee of the Defendant, Tina Reynolds ("Reynolds"), telephoned Defendant's chief executive officer, John Hackney ("Hackney"), at his home and alleged that Plaintiff had fondled and sexually battered her. Hackney immediately called one of Defendant's attorneys, John Jordan ("Jordan"), and told Jordan of Reynold's allegations against the Plaintiff. Jordan then called Reynolds and arranged to meet her at his office the following morning.

---

[1]In accordance with an agreement made by the parties, Franklin American Corporation was substituted as a defendant in the place of Franklin American Life Insurance Company.

On August 17, 1993 at approximately 8:00 a.m., Reynolds arrived at the office of Anderson & Jordan, attorneys for the Defendant. Jordan greeted Reynolds at the door and arranged for his law partner, Charles Anderson ("Anderson"), to interview Reynolds regarding her sexual battery allegations against the Plaintiff.

Following Anderson's interview with Reynolds, Hackney, Jordan, Taylor Moore ("Moore"), one of Defendant's officers, and Gary Atnip, Defendant's chief financial officer, decided that Plaintiff's employment with the Defendant should be terminated. Hackney then instructed Jordan and Moore to inform Plaintiff that he was fired.

Around 10:00 a.m. on August 17, 1993, Jordan and Moore went to Plaintiff's office to inform him that his employment with the Defendant had terminated. Two of Defendant's employees, Steve Carr ("Carr") and Parker Judd ("Judd"), were in the office at the time Jordan and Moore came to tell Plaintiff that he was fired. Jordan asked Carr and Judd to step outside. After Carr and Judd left the office, Jordan and Moore told Plaintiff that he was fired and that he should pack his belongings and leave immediately. Plaintiff then packed his belongings, and Jordan and Moore escorted Plaintiff to his car. Jordan and Moore did not tell Plaintiff the reason his employment was terminated.

Prior to Plaintiff's employment termination, Anderson's interview with Reynolds was the only investigation that Defendant undertook in evaluating the truthfulness of Reynold's allegations against the Plaintiff. Defendant never discussed with Plaintiff the allegations that Reynolds had made against him.

After Plaintiff was fired, Jordan acted as the temporary manager of Defendant's Nashville office. The following week after Plaintiff's termination while Jordan, Carr, and Judd were working in Defendant's office sorting through files, Carr stepped back to pick up the file cabinets, and Judd asked Jordan the reason Plaintiff was fired. Jordan responded that Plaintiff was fired because he had inappropriately touched Reynold's blouse.

3

In an affidavit, Carr stated that he was never told by the Defendant or any agent acting on behalf of the Defendant that the reason Plaintiff was fired was because of his sexual harassment of another employee. Carr further stated that the specific reasons for Plaintiff's termination were never discussed with him.

**LAW**

The sole issue before this Court is as follows:

Whether the trial court erred in denying Defendant's motion for summary judgment regarding the statement Defendant's attorney made to one of Defendant's employees concerning the reason Plaintiff was fired.

The standards governing our review of a trial court's action on a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the trial court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. Carvell v. Bottoms, 900 S.W.2d 23, 26 (Tenn. 1995); Cowden v. Sovran Bank/Central South, 816 S.W.2d 741, 744 (Tenn. 1991); Foley v. St. Thomas Hosp., 906 S.W.2d 448, 452 (Tenn. Ct. App. 1995); Brenner v. Textron Aerostructures, A Division of Textron, Inc., 874 S.W.2d 579, 582 (Tenn. Ct. App. 1993). Tennessee Rule of Civil Procedure 56.03 provides that summary judgment is only appropriate where: (1) there is no genuine issue of material fact relevant to the claim or defense contained in the motion, and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. Carvell, 900 S.W.2d at 26; Byrd v. Hall, 847 S.W.2d 208, 210 (Tenn. 1993); Anderson v. Standard Register Co., 857 S.W.2d 555, 559 (Tenn. 1993). The moving party has the burden of proving that the motion satisfies these requirements. Downen v. Allstate Ins. Co., 811 S.W.2d 523, 524 (Tenn. 1991).

While the summary judgment procedure is not a substitute for trial, it goes to the merits of the complaint and should not be taken lightly. Byrd, 847 S.W.2d at 210; Jones

4

v. Home Indem. Ins. Co., 651 S.W.2d 213, 214 (Tenn. 1983); Fowler v. Happy Goodman Family, 575 S.W.2d 496, 498 (Tenn. 1978); Foley, 906 S.W.2d at 452. It has been repeatedly stated by the appellate courts of this state that the purpose of a summary judgment proceeding is not the finding of facts, the resolution of disputed factual issues or the determination of conflicting inferences reasonably to be drawn from the facts. Bellamy v. Federal Express Corp., 749 S.W.2d 31, 33 (Tenn. 1988). Rather, the purpose of summary judgment is to resolve controlling issues of law. Id.

In evaluating the propriety of a motion for summary judgment, we view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Byrd, 847 S.W.2d at 210-11. A motion for summary judgment should only be granted when both the facts and the conclusions drawn from the facts permit a reasonable person to reach only one conclusion. Id.

In order to prevail in a defamation action, a plaintiff must demonstrate some level of fault on the part of the defendant. Memphis Pub. Co. v. Nichols, 569 S.W.2d 412, 418 (Tenn. 1978). The Tennessee Supreme Court in Nichols decided that negligence is the requisite level of fault that must be established by a private figure plaintiff who is bringing a defamation action. Id. The supreme court in Nichols stated:

> In determining the issue of liability, the conduct of the defendant is to be measured against what a reasonably prudent person would, or would not, have done under the same or similar circumstances. This is the ordinary negligence test that we adopt, not a "journalistic malpractice" test whereby liability is based upon a departure from supposed standards of care set by publishers themselves.
> In our opinion, the appropriate question to be determined from a preponderance of the evidence is whether the defendant exercised reasonable care and caution in checking on the truth or falsity and the defamatory character of the communication before publishing it.

Nichols, 569 S.W.2d at 418 (citations omitted).

In Press, Inc. v. Verran, 569 S.W.2d 435, 442 (Tenn. 1978), our Supreme Court adopted the Restatement (Second) of Torts (1977) standards for liability in a defamation suit. The court stated:

5

We are impressed with Standards 580A[2] and 580B, Restatement (Second) of Torts (1977). They read as follows:

\*       \*       \*

§ 580B. *Defamation of a Private Person.*
One who publishes a false and defamatory communication concerning a private person, or concerning a public official or public figure in relation to a purely private matter not affecting his conduct, fitness or role in his public capacity, is subject to liability, if, but only if, he
(a) knows that the statement is false and that it defames the other,
(b) acts in reckless disregard of these matters, or
(c) acts negligently in failing to ascertain them.

We believe that these standards meet the criteria of our federal and state constitutions and we adopt them as the law of this jurisdiction.

Press, Inc., 569 S.W.2d at 442. Thus, liability is only imposed if the defendant acts negligently in failing to ascertain the truth or falsity of the alleged defamatory statement. Id.

In the present case, Plaintiff claims that the Defendant acted negligently in failing to ascertain whether Reynolds' allegations of sexual harassment were true or false. Plaintiff argues that because Anderson's interview with Reynolds was the only investigation that Defendant undertook in evaluating the truthfulness of Reynold's allegations against Plaintiff prior to Plaintiff's employment termination, Defendant was negligent in investigating Reynold's claims of sexual harassment against Plaintiff.

We believe Defendant exercised reasonable care and caution in investigating the veracity of Reynold's allegations of sexual harassment against Plaintiff before Plaintiff was terminated. Reynolds called Hackney at home one evening and complained that Plaintiff had fondled and had sexually battered her. Hackney then called Jordan and apprised Jordan of Reynold's allegations against Plaintiff. Jordan arranged to meet Reynolds the following morning in his law office. Reynolds was interviewed by one of Defendant's attorneys, Anderson, the morning after Reynolds complained to Hackney of Plaintiff's conduct. After interviewing Reynolds regarding her allegations against Plaintiff, Defendant

---

[2]Restatement (Second) of Torts § 580A (1977) deals with the defamation of a public official or public figure. In this case, there is no dispute that the plaintiff is a private figure.

6

formed the belief that Reynold's allegations were well-grounded in fact and that Plaintiff should be terminated. Because we find that the Defendant exercised reasonable care and caution in investigating the truth or falsity of Reynold's allegations, an essential element of Plaintiff's defamation claim fails. A reasonable and prudent person would rely upon their attorneys' observations and insights into a situation. Defendant, therefore, acted reasonably in relying upon its attorneys' judgment that Reynold's allegations were sincere and true and in relying upon its attorneys' advice to fire Plaintiff.

Nonetheless, it is an elementary rule in this state that publication is an essential element of a defamation action without which a complaint must be dismissed. Applewhite v. Memphis State University, 495 S.W.2d 190, 192-93 (Tenn. 1973); Freeman v. Dayton Scale Co., 19 S.W.2d 255, 256 (Tenn. 1929); Woods v. Helmi, 758 S.W.2d 219, 222-23 (Tenn. Ct. App. 1988). Freeman and its progeny stand for the proposition that inasmuch as the gravamen of the act of defamation is pecuniary damage to the character or credit of the party defamed, an action for defamation cannot arise without publication. Woods, 758 S.W.2d at 223. We, therefore, do not reach the matter of privilege, malice or any other question until there is a publication. Id.

In Freeman, the supreme court held that the communication of a defamatory matter between the agents and officers of a corporation in the ordinary course of business was not a publication. Freeman, 19 S.W.2d at 258. The Freeman court quoted the following annotation from 18 ALR 772, 778 which states:

> The more liberal rule, and the one which seemingly has the support of the weight of modern authority, is that, where the communication is made to a servant or business associate in the ordinary and natural course of business, there is no actionable libel.

Freeman, 19 S.W.2d at 257.

In Woods v. Helmi, 758 S.W.2d 219 (Tenn. Ct. App. 1988), a nurse filed a defamation and intentional interference with employment suit against certain doctors and her immediate supervisor following her employment termination. The nurse's defamation

7

action was based upon a memorandum written by her supervisor and circulated to her superiors regarding her operating room behavior. This memorandum led to the nurse's termination. In holding that the supervisor's memorandum was not published for defamation purposes and that the contents of the memorandum, even if published, did not sustain a cause of action for defamation because of the supervisor's lack of malice in preparing the memorandum, this Court stated:

> We interpret Freeman and its progeny to mean that communication among agents of the same corporation made within the scope and course of their employment relative to duties performed for that corporation are not to be considered as statements communicated or publicized to third persons.

Woods, 758 S.W.2d at 223.

The communications in the present case, like those in Woods v. Helmi, were made "among agents of the same corporation . . . within the scope and course of their employment relative to duties performed for that corporation," or were made to those "in the 'need to know' channel." See Woods, 758 S.W.2d at 224. Under the rationale of Woods, we are compelled to find that the communications "are not to be considered as statements communicated or publicized to third persons." Id. at 223. Because there was no publication, the action of the trial court must be reversed.

Furthermore, even if the statements made by Defendant's attorney regarding the reason for Plaintiff's employment termination are defamatory, we believe that the Defendant is entitled to summary judgment because this statement is conditionally privileged under a common interest privilege.

A conditional privilege is recognized where the interest which the defendant is seeking to vindicate or further is regarded as sufficiently important to justify some latitude for making mistakes. W. Page Keeton et al., Prosser and Keeton on the Law of Torts, § 115, at 825 (5th ed. 1988). The Tennessee Supreme Court authorized conditional privileges in Southern Ice Co. v. Black, 189 S.W. 861, 863 (Tenn. 1916), and stated:

> Qualified privilege extends to all communications made in good faith upon any subject-matter in which the party

8

> communicating has an interest, or in reference to which he has a duty to a person having a corresponding interest or duty; and the privilege embraces cases where the duty is not a legal one, but where it is of a moral or social character of imperfect obligation. . . . The rule announced is necessary in order that full and unrestricted communication concerning a matter in which the parties have an interest or a duty may be had. It is grounded in public policy as well as reason.

See also Price v. Sale, 8 Tenn. App. 382, 392-93 (1918).

Conditional privileges may cover many different types of interests including a common interest and a public interest. Keeton et al., supra, at 826-31. The common interest privilege has been recognized in Tennessee to cover communications between employees or agents of the same business or corporation. See Woods v. Helmi, 758 S.W.2d 219 (Tenn. Ct. App. 1988); Southern Ice Co., 189 S.W. at 863; Dickson v. Nissan Motor Mfg. Corp., No. 87-289-II, 1988 Tenn. App. LEXIS 80 (Feb. 10, 1988).

In Southern Ice Co. v. Black, 189 S.W. 861 (Tenn. 1916), an employee, Black, filed a defamation action for an alleged slanderous statement made by a foreman of the Defendant corporation where Black worked. The foreman stated that Black had stolen some tickets and that Black was a thief. In holding that the statements made by the foreman were protected by qualified privilege and were not actionable unless malice was shown, the court stated that the foreman was well warranted in believing that Black had stolen a coupon book and that all of the parties to whom the publication was made were interested in the transaction. Id. at 863. Because Black was unable to prove malice, the alleged slanderous statements were not actionable based upon qualified privilege. Id. at 864.

In Freeman v. Dayton Scale Co., 19 S.W.2d 255 (Tenn. 1929), the plaintiff, a former employee of the defendant company, filed suit based upon an alleged libelous communication which passed from an agent of the defendant corporation to the attorney for the plaintiff. Plaintiff sued, in part, based upon the dictation of an allegedly libelous letter by an agent of the defendant to a stenographer of the defendant corporation. In holding that the dictation of a letter containing libelous matter to a stenographer does not

9

constitute publication in the sense of the law of libel, our supreme court stated: "[W]here the communication is made to a servant or business associate in the ordinary and natural course of business, there is no actionable libel." Id. at 257.

In Dickson v. Nissan Motor Mfg. Corp., No. 87-289-ll, 1988 Tenn. App. LEXIS 80 (Tenn. Ct. App. Feb. 10, 1988), an employee, Dickson, filed suit against his employer for alleged slanderous statements made to his superiors. Dickson was fired from the Defendant corporation for insubordination and for speaking to his superior in an obscene and threatening manner. In holding that the Defendants' statements were protected under a qualified privilege, this Court stated:

> One is entitled to learn from his associates what is being done in a matter in which he has an interest in common with them. This interest in their common affairs entitles him to information as to how they are conducted, or to information that affects their common interest, even though he is not personally concerned with the information. Restatement of Torts 2d. 1977 - 596, comment c.
>
> *　　　*　　　*
>
> This Court agrees with the argument of defendants that, where a plant employee is discharged, the employer has a privileged right to state and the other employees have a privileged right to hear that the discharge has taken place and the grounds therefor, stated in general terms.

Id. at *8-9.

Similarly, in Perry v. Fox, No. 01A01-9407-CV-00337, 1994 Tenn. App. LEXIS 763 (Tenn. Ct. App. December 21, 1994), plaintiff was fired from his job at South Central Bell Telephone Company ("SCB") after being accused of work related misconduct including malicious destruction of property, impersonation of another SCB employee, incorrectly documenting time, and making unauthorized representations to a SCB customer. Plaintiff filed a defamation suit against Fox, an employee of SCB, and SCB based upon a memorandum Fox prepared and distributed which stated that plaintiff had been terminated for malicious destruction of property and that in the future plaintiff would not be welcome on company property. Plaintiff further alleged that SCB failed to make a reasonable investigation into the allegations against him before terminating his employment. In upholding the trial court's grant of summary judgment in favor of the defendants', this court stated:

10

> It is an elementary rule in this state that publication is an essential element of a libel action without which a complaint must be dismissed. Applewhite v. Memphis State University, 495 S.W.2d 190 (Tenn. 1973); Woods v. Helmi, 758 S.W.2d 219 (Tenn. App. 1988). Taken in the light most favorable to the plaintiff, the memorandum was disseminated to certain fellow employees of the plaintiff. This action falls short of publication within the ambit of the rule. As stated in Freeman v. Dayton Scale Co., 159 Tenn. 413, 19 S.W.2d 255 (Tenn. 1929), "where communication is made to a servant or business associate in the ordinary or natural course of business there is no actionable libel." See also, Woods, *supra*.

Perry, 1994 Tenn. App. LEXIS 763, at *3.

The privilege can be lost, however, if the defendant does not act with good faith or acts with actual malice. When a communication is conditionally privileged, it is not actionable unless actual or express malice is shown by the plaintiff. Woods v. Helmi, 758 S.W.2d 219, 224 (Tenn. Ct. App. 1988); Southern Ice Co., 189 S.W. at 863-64. Once privileged, the statement is presumed to have been made without malice, and the burden is on the plaintiff to prove express malice. Langford v. Vanderbilt University, 318 S.W.2d 568, 576 (Tenn. Ct. App. 1958). To prove actual malice, there must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication, and that publishing, with such doubt, shows reckless disregard for truth or falsity and demonstrates actual malice. Moore v. Bailey, 628 S.W.2d 431, 433-34 (Tenn. Ct. App. 1981).

The record does not reveal that the Defendant entertained serious doubts as to the veracity of Reynold's allegation of sexual battery against the Plaintiff or that the Defendant acted with actual malice. As stated above, the record does not indicate that the Defendant acted negligently in investigating Reynold's allegations. We hold that the statement by Defendant's attorney to one of Defendant's employees regarding the reason for Plaintiff's employment termination is conditionally privileged under a common interest privilege and, therefore, is not actionable.

The action of the trial court denying summary judgment to Defendant regarding the statement Defendant's attorney made to one of Defendant's employees concerning the

11

reason for Plaintiff's employment termination is hereby reversed.  Costs on appeal are taxed to Plaintiff for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:


_____
FARMER, J.


_____
LILLARD, J.